UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:16-cr-00029 (MPS) |
| v. | |
| TIMOTHY BURKE | October 12, 2016 |

## RULING ON MOTIONS

Defendant Timothy Burke moves to sever Court Nine of the Second Superseding Indictment (ECF No. 107), moves to strike surplusage from the Indictment (ECF No. 109), and moves to suppress any attorney-client privileged communications between him and his co-defendant, Bradford Barneys (ECF No. 111).  For the reasons stated below, the Motion to Sever is DENIED, the Motion to Strike is DENIED, and the Motion to Suppress is DENIED without prejudice.

### I. Background

On April 27, 2016, a grand returned a twelve-count Second Superseding Indictment charging Defendant Timothy Burke with conspiracy, mail fraud, wire fraud, aggravated identity theft, tax evasion, and money laundering.  (ECF No. 79.)  The Indictment alleges that Burke, along with his co-defendant Bradford Barneys, took control from homeowners of foreclosed properties through fraudulent representations.

### II. Discussion

#### a. Motion to Sever

Defendant first moves to sever Count Nine of the Indictment, which charges him with tax evasion.  Count Nine of the Second Superseding Indictment states:

From on or about May 2007 to in or about November 19, 2015, in the District of Connecticut and elsewhere, the defendant Timothy W. Burke did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States for the calendar year set forth for calendar years [sic] 1994, 1995, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2007, 2010, 2011, and 2012, in the amount of $1,029,584.58, by the following affirmative acts of evasion:

  a. Instructing tenants to pay rent in cash;
  b. Depositing rental income into a nominee bank account with other individuals as signatories;
  c. Structuring multiple cash deposits under $10,000 at multiple bank branches to avoid the filing of Currency Transaction Reports ("CTRs"); and
  d. Holding real property in a nominee name.

All in violation of Title 26, United States Code, Section 7201.

(Indictment, ECF No. 79 at ¶ 56.)

Defendant argues that Rule 8(b) of the Federal Rules of Criminal Procedure applies to the Motion to Sever. The Second Circuit has left open the question of whether the Rule 8(a) or the Rule 8(b) standard applies to severance motions where a defendant in a multi-defendant case seeks severance of a count in which only he is charged. *See United States v. Shellef*, 507 F.3d 82, 97 n.12 (2d Cir. 2007). The Court need not address the question, as Defendant's motion for severance fails under either standard. The motion for severance under Rule 14 also fails, because Defendant has failed to make the required showing of "substantial prejudice."

  i. *Joinder Under Rule 8*

Count Nine is properly joined under both Rule 8(a) and 8(b). Under Rule 8(a), offenses may be charged together if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8. Rule 8(b) has a more restrictive standard for joinder. "[W]hile Rule 8(a) allows joinder of offenses that are of 'the same or similar character,' Rule 8(b) does not allow joinder of

2

defendants on that basis alone-they must be 'alleged to have participated in the same act or transaction, or in the same series of acts or transactions.'" *United States v. Shellef*, 507 F.3d 82, 97 (2d Cir. 2007). To be joined under 8(b) "the acts must be unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (internal quotation marks and citations omitted).

The Government argues that the conduct alleged in Count Nine "was committed by Burke not only to defeat taxes but to conceal and perpetuate his fraudulent [mail and wire] scheme as well," and the allegations of the Indictment support this argument. (ECF No. 119 at 5.) For example, both the mail fraud and the tax evasion counts allege that Burke directed tenants to pay rent in cash (ECF No. 79 at ¶s 36, 56a), used the names of other persons to open and hold bank accounts for his benefit (*id.* at ¶s 12, 56b), and used corporate entities to hold, or to purport to hold, real property. (*Id.* at ¶s 42, 56d.) Based on the allegations, the acts are unified by common facts and participants and form part of a common plan or scheme, which meets the requirements of both Rule 8(a) and Rule 8(b). *See Shellef*, 507 F.3d at 88 ("Even if the character of the funds . . . does not convince us of the benefit of joining the two schemes in one indictment other overlapping issues may." (Citing "same act or transaction" language of Fed. R. Crim. P. 8(a), which is close to the Rule 8(b) standard)). More generally, the theory of the Indictment is that Burke engaged in a series of acts – including the alleged tax evasion and structuring activity – in an attempt to conceal his alleged fraudulent real estate scheme. (ECF No. 79 at ¶ 27 ("It was further part of the conspiracy that BURKE concealed his failure to pay the mortgage, interest, and taxes from the homeowner victims and further concealed his failure to contact their mortgage lenders."), ¶ 44 ("It was further part of the conspiracy that BURKE would and did deny that he was "Timothy W. Burke" in order to conceal his true identity, to prevent

discovery of his criminal history, and to perpetuate the scheme, including, but not limited to, in correspondence with the Better Business Bureau."), ¶ 56 ("[T]he defendant Timothy W. Burke did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States . . . by . . . [i]nstructing tenants to pay rent in cash; . . . and [h]olding real property in a nominee name.").)  Further, the structuring activity, which is expressly alleged to have involved proceeds of the fraudulent real estate scheme (*id.* at ¶ 58), is also listed as one of the acts of tax evasion.  (*Id.* at ¶ 56(c).)  In short, the counts are closely linked and easily qualify as "the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).

Defendant also argues that Count Nine is based in part on a failure to pay taxes from 1994-2007 and thus does not match the time period of the other alleged conduct in the Indictment, but the Government has alleged that the affirmative acts of evasion related to his tax obligations for the years 1994-2012 occurred in the span of 2007-2015, approximately the same time period as the charged mail and wire fraud.  (ECF No. 79 at ¶ 46, 49, 56.)  Indeed, although the alleged aim of the tax evasion covered tax years from over a decade before the alleged real estate scheme, the Government alleges no conduct by Burke related to tax evasion before May 2007.  Thus, there is no temporal mismatch and Count Nine is properly joined.

        *ii.  Joinder Under Rule 14*

Defendants seeking severance pursuant to Fed. R. Crim. P. 14 must shoulder a heavy burden:

> Notwithstanding proper joinder, counts charged in the same indictment may be severed, under Fed.R.Crim.P. 14, if joinder presents a risk of prejudice. Given the balance struck by Rule 8, which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice.

4

*United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (*citing United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988)). "To warrant severance, the prejudice must be of such a degree that the defendant's rights cannot adequately be protected by cautionary instructions to the jury and that, without a severance, she would be denied a fair trial." *United States v. Owens*, 824 F. Supp. 24, 25 (D. Conn. 1993).

Defendant seeks to sever the tax evasion count because it will be used to "suggest that the defendant has a propensity for dishonest, fraudulent behavior." (ECF No. 108 at 8.) Defendant cites *United States v. Litwok*, 678 F.3d 208 (2d. Cir. 2012) for the proposition that joining unrelated tax evasion charges to other charges is prejudicial because it allows the jury to use it as propensity evidence. This case is easily distinguished from *Litwok*, however. The *Litwok* Court found that the tax evasion charges were improperly joined under Rule 8(a) because there was "no evidentiary overlap" and "no link, let alone a direct one, between the fraudulent insurance claim underlying the mail fraud count (Count One) and the unreported income underlying Count Two." *Id.* at 216-17. As shown above, however, the Indictment in this case alleges that the same acts that constituted tax evasion were also part of the manner and means of the alleged mail fraud scheme, and were specifically designed to conceal that scheme. Further, Burke has not shown that "there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). While the Court will consider giving limiting instructions the parties might propose to minimize the possibility of unfair prejudice from a joint trial, it will not sever Count Nine under Rule 14.

    b. <u>Motion to Strike</u>

Defendant also moves to strike references to his criminal history and his alleged aliases in the case caption of the Second Superseding Indictment. The relevant language discussing criminal history that Defendant Burke seeks to strike appears in Paragraph 2 of the Second Superseding Indictment:

> In or around 2002, BURKE was indicted by a federal grand jury in the District of New Jersey on charges of conspiracy, mail fraud, and equity skimming. In or around March 2003, BURKE pleaded guilty to conspiracy to commit mail fraud and equity skimming and was sentenced to a term of imprisonment. BURKE was released from federal custody in approximately August 2007 and began his federal supervised release at that time. BURKE was convicted under the name "Timothy W. Burke." One of the special conditions of BURKE's supervised release was that he refrain from employment in the real estate business or mortgage industry.

(ECF No. 79 at ¶ 2.)

"Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). "In addition, even language deemed prejudicial should not be stricken if evidence of the allegation is admissible and relevant to the charge." *United States v. Rivera*, 2010 WL 1438787, at *5 (E.D.N.Y. Apr. 7, 2010). "An indictment may properly set forth background information relevant to a defendant's motive and intent." *United States v. Persico*, 621 F. Supp. 842, 860 (S.D.N.Y. 1985). Furthermore, it is not the undersigned's practice to provide the jury with a copy of the Indictment. The Court does typically include portions of the Indictment in its jury instructions, but those portions ordinarily do not include the case caption.

Evidence of Mr. Burke's prior conviction may be admissible and relevant at trial. As the Government explains in its memorandum, Defendant Burke allegedly committed the crimes charged while on federal supervised release for similar charges. The allegations of the Indictment suggest that the criminal history is part of the story behind Burke's alleged use of

6

aliases and reluctance to use his real name, all of which was also designed to conceal his activities.  (*See* ECF No. 79 at ¶s 11, 44.)  It is possible that such evidence will be admissible under Fed. R. Evid. 404(b).  While I decline to determine at this time whether Mr. Burke's criminal history will be admissible, the fact that it may be and goes to show his motive and intent means that it is inappropriate to strike the language from the Indictment.

Defendant Burke also argues that the above-quoted statement from Paragraph 2 is incorrect, because he did not plead guilty to conspiracy to commit mail fraud and instead pled guilty to conspiracy to defraud the United States, based on the docket sheet in his case.  A review of the plea agreement from the 2003 case, however, shows that Mr. Burke pled to "Count One of the Indictment, Criminal No. 02-315, which charges conspiracy to commit equity skimming and mail fraud in violation of 18 U.S.C. § 371."  (Plea Agreement, Case No. 02-CR-315-SRC (D.NJ), ECF No. 29, attached hereto as an exhibit.)  In any event, Defendant Burke has not shown that the inclusion of his prior conviction rises to the level of being "inflammatory and prejudicial," especially since it may be admissible at trial.

The motion to strike surplusage as to the aliases in the case caption similarly fails.  "[A]liases and nicknames should not be stricken from an Indictment when evidence regarding those aliases or nicknames will be presented to the jury at trial." *United States v. Elson*, 968 F. Supp. 900, 909 (S.D.N.Y. 1997) (c*iting United States v. Ianniello,* 621 F.Supp. 1455, 1479 (S.D.N.Y.1985)); *see also United States v. Mason*, 2007 WL 541653, at *5 (S.D.N.Y. Feb. 16, 2007) ("Accordingly, aliases may be included in an indictment where evidence of those aliases will be presented to the jury at trial.").

Here, the Government represents that it will call multiple witnesses who will testify that they knew Defendant Burke as one of the aliases listed in the Indictment and the case caption.

Furthermore, as the Government points out in its brief, Defendant Burke concedes the relevance of the aliases as used in the Indictment itself. As he does not object to the aliases in the Indictment as "inflammatory and prejudicial," the Court is unable to see how the addition of the aliases to the case caption could be so.  Again, the Court's practice is not to give the Indictment to the jury.

Therefore the motion to strike surplusage is denied.  The Defendant may, of course, raise challenges to evidence of aliases and prior convictions at the time for filing motions in limine set forth in the pretrial order.  (ECF No. 86.)

    c.  Motion to Suppress

Defendant's Motion to Suppress any evidence protected by attorney-client privilege is denied without prejudice.  The government has not identified its trial exhibits yet, and it is thus premature for the Court to decide this issue.  The defendant can refile the motion should it become ripe as discovery continues.

### III.  Conclusion

For the reasons stated above, the Motion to Sever is DENIED, the Motion to Strike is DENIED, and the Motion to Suppress is DENIED without prejudice.

                      IT IS SO ORDERED.

                      /s/
                      Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
              October 12, 2016