UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY BURKE | No. 3:16-cr-00029 (MPS)<br><br>June 28, 2017 |

**RULING ON MOTION FOR RESTITUTION**

The government moves for restitution for Defendant Timothy Burke's victims in the amounts listed in Amended Exhibit 3/Amended Sealed Exhibit 38. (ECF No. 173.) The defendant objects to the inclusion of A.M. and D.P. in the list of victims. Burke argues that these two individuals are not "victims" within the meaning of 18 U.S.C. § 3663A. For the reasons stated below, the motion for restitution is GRANTED in part and DENIED in part. It is GRANTED for all listed victims except for A.M. and D.P.—the motion for their restitution in the amount of $84,853.84 is DENIED.

I.     **Background**

On January 24, 2017, Burke pled guilty to Count Two of the second superseding indictment, charging him with mail fraud in violation of 18 U.S.C. § 1341 and Count Nine of the second superseding indictment, charging him with tax evasion in violation of 26 U.S.C. § 7201. Burke's scheme involved (1) "enrich[ing] himself by identifying real properties that were in financial distress and/or in foreclosure proceedings", (2) "convinc[ing] victim homeowners to give Burke physical control of their properties by falsely representing to them that [he] was purchasing their properties, would take over their mortgage and interest payments, and would pay the taxes associated with the properties," and (3) "advertis[ing] and rent[ing] out the

1

properties that he fraudulently obtained to make rental income but not pay the homeowner victims' mortgage and interest payments and taxes." (ECF No. 79 ¶¶ 8–10.)

At Burke's sentencing, A.M. addressed the court. She described how Burke had injured her and her husband by renting their house, through a limited liability company, but then chronically failing to make rent payments, subleasing rooms in the house to unknown tenants without A.M.'s or D.P.'s permission, failing to ensure that their property was cared for, making bankruptcy filings to frustrate their efforts to evict him, and leaving unauthorized tenants in the house at the time of his arrest.

After sentencing, the government gathered additional documentation to support A.M.'s claims and asked the Court to add A.M. and D.P. as victims owed restitution. Burke objected, arguing that A.M. and D.P. are not victims within the meaning of the applicable restitution statute.

**II.     Discussion**

The Mandatory Victim Restitution Act, 18 U.S.C. § 3663A(a), which the parties agree applies here, defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." The Second Circuit has held that this definition "reflects an important limiting principle for restitution awards—namely, that Congress has 'authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" *U.S. v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013) (citing *Hughey v. U.S.*, 495 U.S. 411, 413 (1990)). "[R]estitution is not permitted for loss caused by 'relevant conduct' even though

such conduct may be properly included in offense level calculation under the Sentencing Guidelines." *Id.* (internal citations omitted).

The scheme alleged in the second superseding indictment did not include delinquency in rental payment. Instead, the scheme involved Burke falsely representing to owners of distressed properties that he would take title and pay the mortgage, interest, and taxes of their properties, while in fact renting them out for his own profit. (ECF #79.) The government notes that Burke did sublet A.M. and D.P.'s property and retain that income—much like he subleased other victims' property. But with A.M. and D.P., Burke made no false representation that he was purchasing their house—the core ingredient of the scheme. Although Burke's actions against A.M. and D.P. may be relevant conduct for the purposes of the offense level calculation and although Burke substantially injured A.M. and D.P., the injury he caused them was not "in the course of the scheme, conspiracy, or pattern" alleged in the second superseding indictment. 18 U.S.C. § 3663A(a).

A.M. and D.P. also are not "victims" even though Burke used an entity mentioned in the second superseding indictment to sign the lease. The government concedes that A.M. and D.P. are not "homeowner or tenant victims as the Court has seen and heard from." (ECF No. 173.) But it then argues that § 3663A's definition of "victim" can apply because Burke "us[ed] a lease agreement in the name of a corporate entity identified in the second superseding indictment, Quality Asset Management Services LLC" when he rented A.M. and D.P.'s property. *Id.* By itself, Burke's use of an entity also involved in the charged scheme does not make his failure to pay rent—and other activities as a difficult tenant—part of the same "scheme, conspiracy, or pattern."

### III. Conclusion

For the reasons stated above, the Motion for Restitution is GRANTED in part and DENIED in part. The restitution amounts for all victims listed in Amended Exhibit #3/Amended Sealed Exhibit #38 are GRANTED, with the exception of the $84,853.84 requested for A.M. and D.P. The motion is DENIED to the extent it seeks restitution for that amount.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
June 28, 2017